**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**MICHAEL TEFFT, et al.,**

    **Plaintiffs,**       **Case No. 2:15-cv-62**
                 **JUDGE GREGORY L. FROST**
  **v.**             **Magistrate Judge Norah McCann King**

**TRAVELERS PROPERTY CASUALTY**
**OF AMERICA,**

    **Defendant.**

**<u>OPINION AND ORDER</u>**

This matter is before the Court for consideration of the following filings:

(1) a motion for partial summary judgment (ECF No. 16) filed by Travelers Property

Casualty Company of America ("Travelers"), a memorandum in opposition (ECF No. 18) filed

by Michael and Gale Tefft ("the Teffts"), and a reply memorandum (ECF No. 20) filed by

Travelers; and

(2) a motion for summary judgment (ECF No. 17) filed by the Teffts, a memorandum in

opposition (ECF No. 19) filed by Travelers, and a reply memorandum (ECF No. 21) filed by the

Teffts.

For the reasons that follow, the Court **GRANTS** Travelers' motion for partial summary

judgment (ECF No. 16) and **DENIES** the Teffts' motion for summary judgment (ECF No. 17).

**I.  Background**

On July 11, 2014, Zakaria Michael Tefft was involved in a Delaware County, Ohio auto

accident that resulted in his death.  At the time of the accident, Tefft was on a business trip and

driving a car rented from Hertz in Erie, Pennsylvania.  Tefft had arranged for the rental car under

1

an account his employer, Hennes & Mauritz L.P. ("H&M"), had with Hertz, and H&M had paid

for the car.  At the time of the accident, H&M had a commercial automobile insurance policy

through Travelers Property Casualty Company of America ("Travelers").  The policy included

an underinsured motorist coverage endorsement.

  Michael and Gale Tefft ("the Teffts"), are the parents of Zakaria Michael Tefft and the

executors of his estate.  After Travelers denied underinsured motorist coverage under the policy,

the Teffts filed a December 2014 complaint in the Court of Common Pleas in Delaware County,

Ohio.[1]  (ECF No. 3.)  The three-count complaint contains a declaratory judgment claim that the

Teffts are entitled to underinsured motorists coverage, a breach of contract claim, and a bad faith

claim.  (*Id.* at Page ID # 26-28 ¶¶ 46-61.)  Travelers has in turn asserted a declaratory judgment

counterclaim that it does not owe underinsured motorists coverage.  (ECF No. 5, at Page ID #

38-46 ¶¶ 1-36.)  The parties have filed cross-motions for summary judgment on the declaratory

judgment and breach of contract claims (ECF Nos. 16, 17); the bad faith claim was previously

bifurcated (ECF No. 11, at Page ID # 98)  The parties have completed briefing on the motions,

which are ripe for disposition.

---

  [1]  At first blush, it would appear that the declination letters from Travlers relied upon a slightly different theory than the interpretation of the insurance contract papers that Travelers currently asserts.  This Court need not wade into the issues of waiver or forfeiture, to whatever extent they could arguably apply, because the Teffts expressly state in their briefing that they are *not* arguing "that Travelers has somehow waived the right to make the argument," but are instead noting the inconsistency as evidence that Travelers' current interpretation is flawed.  (ECF No. 21, at Page ID # 424.)

## II.  Analysis

### A.  Standard involved

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, which must set forth specific facts showing that there is a genuine issue of material fact for trial.  *Id*. (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)).  Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' "  *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52).

### B.  Discussion

The dispositive issue in this litigation is framed easily enough: does the policy, as modified by a number of endorsements, provide underinsured motorists coverage for the rental

car involved in this case?  Travelers argues that the answer is no because the policy provisions operate so as to provide coverage for rented vehicles *only* for liability and physical damage coverage, *not* for underinsured motorist coverage, subject to certain categories of vehicles that are inapplicable here.  The Teffts in turn argue that the effect of one endorsement is to modify the definition of a covered auto and therefore an insured so that another endorsement extends underinsured coverage in this case .  Unfortunately, despite the ease with which the dispositive issue is framed, explaining the analytic chain that resolves that issue is of course more arduous, if not tortuous.

The labyrinthine route to an answer begins with the contents of the Business Auto Coverage Form.  (ECF No. 17-10.)[2]  The parties agree that the contents of that form on their face do not provide underinsured motorist coverage here.  Rather, such coverage could arise through the policy's Declarations, as Section I of the Business Auto Coverage Form explains: "Item Two of the Declarations shows the 'autos' that are covered 'autos' for each of your coverages.  The following numerical symbols describe the 'autos' that may be covered 'autos'.  [*sic*]  The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".  [*sic*]"  (*Id.* at Page ID # 321.)

This system of indicating which autos are covered autos for the purposes of the policy therefore leads to the Declarations.  The policy's Declarations provide that "[c]overage applies only to those Autos shown as Covered Autos by entry of one or more symbols from SECTION 1 – Covered Autos of the BUSINESS AUTO COVERAGE FORM."  (ECF No. 17-9, at Page ID #

---

[2]  For ease of reference, the Court shall cite only to the policy documents submitted in conjunction with the Teffts' motion for summary judgment.  The same documents appear elsewhere in the record, but there is no point in providing duplicative citations here.

314.)  The Declarations then indicate that "Uninsured and Underinsured Motorist Coverage" apply to two Covered Auto Symbols–specifically, Symbol 2 and Symbol 13.[3]  (*Id.* at Page ID # 315.)  Necessarily returning to the Business Auto Coverage Form, the Court finds that Section I(A) defines Symbol 2 to mean "Owned 'Autos' Only," which is described as "[o]nly those autos you own . . . .  This includes those 'autos' you acquire ownership of after the policy begins." (ECF No. 17-10, at Page ID # 321.)

At this point in today's inquiry, then, underinsured motorist coverage applies only to autos that H&M *owns*, which did not include the rental car that Zakaria Michael Tefft was driving.  This is not the end of the inquiry, however, because the parties disagree over whether two endorsements modify the policy definition of a covered auto so as to provide underinsured motorists coverage that applies here.

The first endorsement, titled Short Term Hired Auto – Additional Insured and Loss Payee, modifies the Business Auto Coverage Form to include coverage for "[a]ny lessor of a 'leased auto' under a leasing or rental agreement of less than 6 months."  (ECF No. 17-11, at Page ID # 333.)  The endorsement provides that "[w]ith respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement." (ECF No. 17-11, at Page ID # 333.)  The Schedule portion of the endorsement then provides that "Leased Auto" generally means "[a]ny 'leased auto' under a leasing or rental agreement of less than 6 months," with Section D providing the more specific definition of "an 'auto' leased or rented to you . . . under a leasing or rental agreement that requires you to provide direct primary insurance for the lessor."  (*Id.*)  Section (A)(1) of the endorsement provides that "[a]ny 'leased

_____

[3]  The parties agree that Symbol 13 is irrelevant to this litigation.

auto' designated or described in the Schedule will be considered a covered 'auto' you own and not a covered 'auto' you hire or borrow." (*Id.*) Section A(2) of the endorsement explains that, "[f]or a 'leased auto' designated or described in the Schedule, Who Is An Insured is changed to include as an 'insured' the lessor of such 'leased auto.' However, the lessor is an 'insured' only for 'bodily injury' or 'property damage' resulting from the acts or omissions by [various specified individuals]." (*Id.*)

This endorsement thus affects Section II of the Business Auto Coverage Form, titled "Liability Coverage" (ECF No. 17-10, at Page ID # 322), and Section III of the Business Auto Coverage Form, titled "Physical Damage Coverage" (*Id.* at Page ID # 326). The former section provides coverage for "damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto[.]' " (*Id.* at Page ID # 322.) Section V(C) of the Business Auto Coverage Form defines "bodily injury" as "bodily injury, sickness or disease sustained by a person including death resulting from any of these." (ECF No. 17-10, at Page ID # 330.) Section V(M) defines "property damage" as "damage to or loss of use of tangible property." (*Id.* at Page ID # 332.) The end result of the foregoing provisions is that a rental car falls within the scope of the specified coverage.

What this means is that, at this point in today's inquiry, the Short Term Hired Auto – Additional Insured and Loss Payee modifies the Business Auto Coverage Form to place rental cars into the scope of specified coverage–in other words, for bodily injury and property damage, which is also expressed as liability coverage and physical damage coverage. There is still no underinsured motorists coverage related to the rental car that Zakaria Michael Tefft was driving.

6

This leads to the second endorsement warranting discussion, titled Pennsylvania Underinsured Motorists Coverage – Nonstacked.  (ECF No. 17-12.)  That endorsement also modifies the Business Auto Coverage Form, and does so to include coverage "[f]or a covered 'motor vehicle' licensed or principally garaged in, or 'garage operations' conducted in, Pennsylvania."  (*Id.* at Page ID # 334.)  The endorsement indicates that "[w]ith respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement."  (*Id.*)  The "coverage provided by this endorsement" is underinsured motorists coverage, and a plain-language reading of "unless modified by *the* endorsement" leads to the conclusion that the provision means *unless modified by this underinsured motorists coverage endorsement* and not *unless modified by this and any other endorsement*.

This last point is important because it closes the door on extending coverage based on *any* endorsement's modification of the Business Auto Coverage Form.  Disposition of today's issue turns on the limited, context-specific modification effectuated by the Short Term Hired Auto – Additional Insured and Loss Payee endorsement.  That endorsement altered specific coverage in targeted, particularized circumstances; a plain-language reading of the endorsement teaches that it did not change a fundamental provision of the Business Auto Coverage Form that would spill over to alter coverage in other areas.  An endorsement of course could do that, but the specific endorsement here did not.  Other endorsements may modify the Business Auto Coverage Form for other purposes, but for purposes of underinsured coverage, the language of the underinsured endorsement and the "default" language of the Business Auto Coverage Form

7

control.  This reading precludes the Teffts from bootstrapping a modification by another endorsement into a modification that informs coverage that only the underinsured endorsement can create.  The underinsured endorsement provided the only means for effectuating a modification of what constituted a covered auto–transforming the rental car into a "leased auto" that is a covered "owned auto"–and the underinsured endorsement did not do so here.

Unlike the Short Term Hired Auto – Additional Insured and Loss Payee endorsement, there is no modification of Symbol 2 via the Pennsylvania Underinsured Motorists Coverage – Nonstacked endorsement.  Stated more simply, the underinsured endorsement does not add a rental car to the definition of an Owned Auto.  The end result of the foregoing provisions is that a rental car falls outside the scope of underinsured motorists coverage.  The only cars falling within the scope of the underinsured endorsement coverage are cars that H&M owns.

The Court is cognizant that the Teffts offer two state court cases in which leased vehicles were deemed "owned" vehicles that led to underinsured motorist coverage.  Neither case involves New Jersey law, which is what applies in the instant case.  Both cases make today's decision a notably close one, however, particularly *Geise v. Safeco Ins. Co.*, No. CV085008363, 2012 WL 266383 (Sup. Ct. Conn. Jan. 5, 2012).  This Court can see and appreciate a policy reading that would provide underinsured coverage here.  But the state cases do not satisfactorily answer today's dispute because their language is not exactly as stringent as the language the instant case places before the Court.  Neither state case ultimately proves persuasive.

What all of this means for this litigation is that the rental car involved in the tragic accident that led to Zakaria Michael Tefft's death was not a covered auto under the policy that Travelers issued to H&M.  Consequently, neither Zakaria Michael nor the Teffts are covered

8

under the policy for underinsured motorists coverage.  This is because underinsured motorists coverage only applied to covered persons in covered autos.  H&M did not own the car, however, and the car was not licensed or principally garaged in Louisiana, Illinois, or Wisconsin. Travelers is therefore entitled to declaratory judgment via its counterclaim in this regard, as well as summary judgment on the Teffts' breach of contract claim.  Given this outcome, the Teffts' bad faith claim (reserved for later adjudication if they prevailed today) necessarily fails as well.

Having concluded that the policy does not provide for underinsured motorists coverage that would apply to the facts of this case, this Court need not and does not discuss the parties' other disputes, such as the dispute over H&M rented the car involved in the accident.  The Court has assumed for the sake of argument that H&M did and has proceeded to analyze the coverage issue under the assumption that the policy potentially applied.

### III.  Conclusion

For the foregoing reasons, the Court **GRANTS** Travelers' motion for partial summary judgment (ECF No. 16) and **DENIES** the Teffts' motion for summary judgment (ECF No. 17). The Clerk shall enter judgment accordingly and terminate this case on the docket records of the United States District Court for the Southern District of Ohio, Eastern Division.

**IT IS SO ORDERED.**

>            /s/ Gregory L. Frost
> GREGORY L. FROST
> UNITED STATES DISTRICT JUDGE